IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2002 Session

## JERRY WALKER, ET AL. v. RICKY E. WHITE, ET AL.

**Direct Appeal from the Circuit Court for Macon County**
**No. 4287     John D. Wootten, Jr., Judge**

_____

**No. M2001-02438-COA-R9-CV - Filed June 20, 2002**

_____

This is an interlocutory appeal by permission which raises issues of first impression concerning the federal Right to Financial Privacy Act and the Tennessee Financial Records Privacy Act. We first must determine whether state courts retain concurrent jurisdiction to resolve claims brought against a bank by its customer arising under the federal Act. We hold that federal court jurisdiction under the Act is permissive. State courts therefore retain concurrent jurisdiction over such claims. We further hold that the Tennessee Financial Records Privacy Act is not applicable to federal agencies which issue subpoenas for bank records. The furnishing of information pursuant to a subpoena issued by a federal agency is governed in Tennessee by the federal Right to Financial Privacy Act. Accordingly, we affirm the trial court's order denying summary judgment on these issues to the Defendant.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Philip C. Kelly and Gwynn K. Smith, Gallatin, Tennessee, for the appellant, Citizens Bank of Lafayette.

Alan Mark Turk, Brentwood, Tennessee, for the appellees, Jerry Walker, Opal Walker, and Walker & Assoc. Realty, Inc. f/k/a Century 21 Walker & Assoc., Inc.

**OPINION**

The litigation underlying this interlocutory appeal arises from allegations made by defendant Ricky White[1] (White) that the plaintiffs Jerry Walker and wife, Opal Walker (the Walkers) had filed for bankruptcy, hidden assets and perpetuated a fraud on the Farmers Home Administration (FmHA), an agency of the United States Department of Agriculture (USDA), in connection with a debt settlement agreement. During the course of the USDA investigation of these allegations, the Inspector General of the USDA issued subpoenas duces tecum to the defendant Citizens Bank of Lafayette (Bank) in December of 1993, requesting the financial records of the Walkers and their real estate corporation. The Walkers filed a motion to quash the subpoena of their personal records in the U.S. District Court for the Middle District of Tennessee.[2] The court ordered the USDA to disclose the nature of the law enforcement investigation of the Walkers, and the Walkers withdrew the motion.[3]

The Walkers subsequently were indicted and arrested on charges that they

---

[1] Ricky White was a consulting engineer to the City of Lafayette when Mr. Walker was elected to Lafayette's City Council in 1990. According to the Walkers' amended complaint, in July of 1992, White was replaced by a four to two vote. Mr. Walker was among those council members voting to replace White with a competing engineering firm. In December of 1992, White allegedly contacted the FmHA, stating that Walker was defrauding creditors and the bankruptcy court by transferring real property to family members. It was later determined that Walker had not filed for bankruptcy. The complaint against White includes:

*Count One:* Malicious Prosecution
*Count Two:* Common Law Procurement of Breach of Contract and Business Relationship
*Count Three:* Violation of Tenn. Code Ann. § 47-50-109

[2] Section 3410 of the Right to Financial Privacy Act of 1978 (RFPA) provides for customer challenges of a subpoena. The section mandates that such challenges "shall be filed in the appropriate United States district court" and that "[t]he challenge procedures of this title constitute the sole judicial remedy available to a customer to oppose disclosure of financial records pursuant to this title." 12 U.S.C.S. § 3410 (a),(e)(2002).

[3] The RFPA provides, in pertinent part:

A Government authority may obtain financial records under section 1102(2) [12 U.S.C.S. § 3402(2)] pursuant to an administrative subpena or summons otherwise authorized by law only if-
(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;
(2) a copy of the subpena or summons has been served upon the customer or mailed to his last known address on or before the date on which the subpena or summons was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry . . . .

12 U.S.C.S. § 3405 (1) (2) (2002).

knowingly and willfully ma[d]e or caused to be made false, fictitious and fraudulent statements and representation in an Application for Settlement of Indebtedness, submitted to the Farmers Home Administration, in that [they] concealed and did not disclose on the Application various business and real estate assets which they owned or maintained constructive title, ownership and possession thereof. In violation of Title 18, United States Code, Sections 1001 and 2.

A criminal trial of the Walkers was held in January of 1998. According to the Walkers' amended complaint, they had not in fact filed for bankruptcy and the action against them was dismissed on January 27, 1998.[4]

In January of 1999, the Walkers and Walker & Assoc. brought suit against the Bank, alleging, inter alia, violations of the RFPA and the Tennessee Financial Records Privacy Act (the Tennessee Act).[5] On June 22, 2001, the Bank filed a motion for summary judgment which the court denied as to all issues but one.[6] In October of 2001, the trial court granted the Bank's motion for permission to seek an interlocutory appeal of its ruling denying the Bank's motion for summary judgment and entered a stay pursuant to Tenn. R. App. P. 9. The Bank's application for permission for interlocutory appeal was granted by this Court on October 26, 2001.

### Issues Presented for Interlocutory Appeal

This Court granted permission for interlocutory appeal of the following issues:

(1) Do state courts have subject matter jurisdiction to entertain the Plaintiff's claims asserted under the Federal Right to Privacy Act of 1978?

---

[4]Although there is no transcript of these proceedings in the record before this Court, the Bank does not dispute that the action against Walkers was dismissed.

[5]In their amended complaint, the Walkers allege:

*Count One*: Malicious Prosecution (Jerry and Opal Walker v. Ricky White)
*Count Two*: Common Law Procurement of Breach of Contract and Business Relationship (Jerry and Opal Walker v. Ricky White)
*Count Three*: Violation of T.C.A. 47-50-109 (Jerry and Opal Walker v. Ricky White)
*Count Four*: Common Law Procurement of Breach of Contract and Business Relationship (Corporate Plaintiff v. Ricky White)
*Count Five*: Violation of T.C.A. 47-50-109 (Corporate Plaintiff v. Ricky White)
*Count Six*: Violation of the Right to Financial Records Privacy Act, T.C.A. §§ 45-10-101 et seq. (all Plaintiffs v. Bank); AND Violation of the Financial Privacy Act of 1978, 12 U.S.C.S. § 3401 et seq (Jerry and Opal Walker v. Bank)
*Count Seven*: Fraudulent Concealment (all Plaintiffs v. Bank)

[6]The trial court granted summary judgment on the question of whether the federal Act protects the corporate entity, properly holding that it does not. The Walkers concede this issue.

(2) Does the Tennessee Financial Records Privacy Act, Tenn. Code Ann. § 45-10-101 *et seq*., apply to federal agencies, such as the U.S. Department of Agriculture, which issue subpoenas for bank records?

(3) Does the Tennessee Financial Records Privacy Act permit the Defendant Bank to disclose records of the Plaintiff Corporation to a federal agency such as the Department of Agriculture, since the Defendant Bank is not prohibited under the Federal Right to Financial Privacy Act from making such disclosure?

### Standard of Review

All issues presented in this appeal are issues of law. The standard of review for this Court on issues of law is *de novo*, with no presumption of correctness afforded to the conclusions of the court below. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

### State Court Jurisdiction

Congress enacted the federal Right to Financial Privacy Act, codified at 12 U.S.C.S. § 3401 *et seq*., in 1978 in response to the holding by the United States Supreme Court in *United States v. Miller*, 425 U.S. 435, 436 (1976), that bank customers do not have a constitutionally protected privacy interest in bank records. *Neece v. Internal Revenue Service*, 922 F.2d 573, 574 (10th Cir. 1990); *see Miller*, 425 U.S. at 436. The Act seeks to balance the protection of bank records from unnecessary intrusion while permitting law enforcement agencies access to those records for use in lawful, legitimate investigations. *Neece*, 922 F.2d at 557 (quoting H.R. Rep. No. 1383, 95th Cong., 2d Sess. 33 *reprinted* in 1978 U.S. Code Cong. & Admin. News 9273, 9305, 9278). The RFPA permits causes of action to be brought in federal court without regard to the amount in controversy.

The Bank asserts that the federal courts have exclusive jurisdiction over causes of action arising under the Act. The Bank calls our attention to section 3416 of the RFPA, which provides:

> An action to enforce any provision of this title may be brought in any appropriate United States district court without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later.

12 U.S.C.S. § 3416 (2002). The Bank argues that this jurisdictional statement, in combination with § 3410 of the federal Act, which mandates that a motion to quash a subpoena issued by a federal agency must be brought in an appropriate United States District Court, evidences exclusive federal court jurisdiction. As further evidence, the Bank points to statements of U.S. District Courts that jurisdiction over the federal Act is "vested exclusively in Article III courts." *See, e.g., McDonough v. Widnall*, 891 F.Supp. 1439, 1448 (D. Colo. 1995). The Bank further submits that since the federal Act operates as a limited waiver of the federal government's sovereign immunity, all actions brought to enforce any of its provisions accordingly must be brought in federal court. We disagree.

We note at the outset that this cause of action does not include a claim against the USDA or any federal officer or agency. The Walkers' complaint names as defendants only Ricky White and Citizens Bank of Lafayette, both of which undisputably are subject to general jurisdiction in the State of Tennessee. Thus issues of the sovereign immunity of the United States, or the waiver thereof, are not elements of this lawsuit.

As both parties acknowledge, there is a strong presumption that state courts retain jurisdiction concurrent with federal courts over claims brought pursuant to federal law. *Taflin v. Levitt*, 493 U.S. 455, 458 (1990). Such state court jurisdiction is limited only by restrictions imposed by the Supremacy Clause of the United States Constitution. *Id.* State court jurisdiction over federal causes of action does not arise because it is specifically conferred by Congress. *Taflin*, 493 U.S. at 469 (Scalia, J., concurring). Rather, such jurisdiction is presumed in the absence of "an affirmative act of power under the Supremacy Clause to oust the States of jurisdiction" *Id.* at 470. State courts retain concurrent jurisdiction over federal claims unless Congress deliberately uses its authority to affirmatively "*withdraw*" that jurisdiction. *Id.*

At oral argument, counsel for the Bank directed our attention to the three considerations enunciated by the U.S. Supreme Court in *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477 (1981), to determine whether Congress intended exclusive federal court jurisdiction over a federal cause of action. In *Gulf Offshore*, the Court opined, "the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from the legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore*, 453 U.S. at 477 (holding that state courts have concurrent jurisdiction over personal injury and indemnity causes of action arising under the Outer Continental Shelf Lands Act (OCSLA)). The Bank contends that since the RFPA acts as a limited waiver of U.S. sovereignty, state court jurisdiction over causes of action arising under the Act is incompatible with federal interests.

We disagree with the Bank that state court jurisdiction is either explicitly or implicitly withdrawn for causes of action arising under the federal Act for three reasons. First, the proposition that state court jurisdiction can by withdrawn by anything less than an explicit statutory directive has been tempered, if not neutralized, by the U.S. Supreme Court in *Taflin* and *Yellow Freight*. *Taflin*, 493 U.S. at 469-473; *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990). Second, we do not believe that the jurisdictional section of the RFPA mandates federal court jurisdiction, even considered in conjunction with § 3410, which provides that a motion to quash a federal subpoena for documents must be brought in district court. Third, even applying the criteria of *Gulf Offshore*, we do not believe state court jurisdiction of causes brought under the RFPA are incompatible with federal interests in cases such as this, where no agency of the U.S. government is a party.

The proposition that state court jurisdiction over causes of action arising under federal acts can be withdrawn by anything other than explicit statutory directive has been called into question by the U.S. Supreme Court in *Taflin* and *Yellow Freight*. In *Taflin*, the Court held that state courts have concurrent jurisdiction in causes of action arising under the Racketeer Influenced and Corrupt Organizations Act (RICO). *Taflin*, 493 U.S. at 458. Quoting *Claflin v. Houseman*, 93 U.S. 130,

136-37 (1876), the Court noted, "if exclusive jurisdiction be neither express nor implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it." *Taflin*, 493 U.S. at 459. The *Taflin* Court considered jurisdictional language similar to that of the RFPA, which provides that a party "may" bring an action "in any appropriate United States district court."[7] *Id.* at 460. Finding that the grant of federal jurisdiction in the RICO statute was clearly permissive, the Court further concluded that nothing in the legislative history of the act indicated that Congress had intended exclusive federal jurisdiction. *Id.* at 461. In so holding, the Court emphasized, "the question is not whether any intent at all may be divined from legislative silence on the issue, but whether Congress in its deliberations may be said to have *affirmatively* or *unmistakably* intended jurisdiction to be exclusively federal." *Id*. at 462 (emphasis added). The Court further found no incompatibility between federal interests and concurrent state court jurisdiction over RICO claims. *Id.* at 464.

Justice Scalia wrote separately in *Taflin*, emphasizing the presumption of concurrent state court jurisdiction over federal acts and calling into question the three element consideration proposed in dictum in *Gulf Offshore*. *Taflin v. Levitt*, 493 U.S. 455, 469-473 (1990) (Scalia, J., concurring). Referencing Alexander Hamilton in The Federalist No. 82, p. 132 (E. Bourne ed. 1947), Justice Scalia wrote, "it would be eminently arguable that depriving state courts of their sovereign authority to adjudicate the law of the land must be done, if not with the utmost clarity . . . at least *expressly*." *Taflin*, 493 U.S. at 470. A careful reading of the Court's opinion in *Gulf Offshore* evidences that the presumption of concurrent jurisdiction is not easily overcome. The "clear incompatibility" between state court jurisdiction and the federal claim referenced by the Court must be so clear as to be "disabling," and while federal law is binding on the courts, "subject-matter jurisdiction . . . is governed in the first instance by state laws." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981). In *Taflin*, Justice Scalia further noted that although the Court had stated that exclusive federal jurisdiction could be found by implication, the only findings of exclusive jurisdiction by implication have been in causes of action arising under the Sherman Act and the

---

[7]The Right to Financial Privacy Act provides:

> An action to enforce any provision of this title may be brought in any appropriate United States district court without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later.

12 U.S.C.S. § 3416 (2002).

> RICO provides:

> Any person injured in his business or property by reason of violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C.S. § 1964(c) (2002).

Clayton Act.[8]  *Taflin*, 493 U.S. at 471.  In practice, state court jurisdiction has been found to be withdrawn only through express recitations such as "'only' in federal court" or "jurisdiction of the federal courts shall be 'exclusive.'" *Id.*

The proposition that state court jurisdiction over a cause of action arising under a federal act must be expressly, affirmatively withdrawn by Congress was emphatically emphasized by the U.S. Supreme Court in *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990).  In *Yellow Freight*, the Court analyzed the enforcement provisions of Title VII, which provide: "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title." 42 U.S.C.S. § 2000e-5(f)(3) (1983 ed.).  Despite holdings in the federal Courts of Appeals that the federal courts had exclusive jurisdiction over Title VII causes of action, the Court held that "Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction." *Yellow Freight*, 494 U.S. at 823.  Writing for the Court, Justice Scalia noted that the legislative history of Title VII indicated that many in Congress had anticipated exclusive federal jurisdiction over claims brought pursuant to the act. *Id.* at 824.  The *Yellow Freight* Court held, however, that this "expectation, even if universally shared, is not an adequate substitute for a legislative decision to overcome the presumption of concurrent jurisdiction." *Id.* at 824-25.

We find nothing in the language of the RFPA which either expressly withdraws state court jurisdiction from, or expressly grants exclusive federal court jurisdiction to, causes of action arising under the Act.  We are aware that some federal courts have referred to the RFPA as being within the exclusive jurisdiction of the federal courts. *See Raikos v. Bloomfield State Bank*, 703 F. Supp. 1365 (1989 SD Ind); *McDonough v. Widnall*, 891 F. Supp. 1439 (D. Colo. 1995).  However, we note that the opinion in *Raikos* was issued in the context of the waiver of sovereign immunity, and that *McDonough* addressed whether jurisdiction over a claim brought under the RFPA was proper in federal court as opposed to military court.  These cases are easily distinguishable from the case at bar, where we are not called upon to address the issue of United States sovereign immunity or the scope of jurisdiction of the military courts.  State court jurisdiction is presumed unless expressly and affirmatively withdrawn by Congress.  The language of the RFPA permits parties to bring suit in federal court, and it allows them to do so without regard to the amount in controversy.  It does not stipulate that the federal courts are the only courts in which jurisdiction is vested.  As the Court stated in *Yellow Freight*, "[t]he omission of any such express provision is strong, and arguably sufficient, evidence that Congress had no such intent." *Yellow Freight Sys. Inc. v. Donnelly*, 494 U.S. 820, 823 (1990).

The Bank submits that section 3410 of the RFPA, which provides for customer challenges of subpoenas for bank records issued by federal agencies, reflects Congressional intent that jurisdiction over the RFPA be exclusively federal.  We disagree. The procedural methods by which

---

[8]Justice White, also writing separately in *Taflin*, distinguished these acts, noting the "disastrous effect on interstate commerce, a particular concern of the Federal Government," which would result from improper interpretation of the antitrust laws. *Taflin*, 493 U.S. at 468.

a customer may challenge a subpoena, summons or written request for financial records issued by a federal agency are delineated in section 3410 and have been strictly construed by the courts. *See, e.g., Raikos,* 703 F.Supp. 1365. This section provides that such a motion to quash a subpoena "***shall*** be filed in the appropriate United States district court." 12 U.S.C.S. § 3410. (emphasis added). Exclusive federal jurisdiction over such a motion is clearly mandatory. This does not, however, evidence Congressional intent that jurisdiction over other aspects of the RFPA also be exclusively federal. The fact that Congress elected to use the permissive "may" in section 3416, while using the mandatory "shall" in section 3410, indicates to us that Congress intended to differentiate between the actions which must be taken by a customer to challenge a subpoena and the judicial remedies provided by the RFPA for alleged violations. The challenge to the federal subpoena must be brought in federal court. Such a challenge is distinct from a cause of action against a financial institution for alleged violations of the Act.

Exclusive federal jurisdiction over some provisions of a federal act is not inconsistent with concurrent state court jurisdiction over other provisions. In ***Holmes Financial Ass'n v. Resolution Trust Corp.***, 33 F.3d 561 (6th Cir. 1994), the Court of Appeals for the Sixth Circuit held that state courts have concurrent jurisdiction over pre-receivership suits against the Resolution Trust Corporation (RTC) brought under the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), for example, while noting that jurisdiction of post-receiverships suits was arguably exclusively federal. ***Holmes Financial***, 33 F.3d at 566 n.5. Likewise, Congress expressly withdrew state court jurisdiction for most claims arising under ERISA, while preserving it for causes of action brought under subsection (a)(1)(B). *Id*. at 565.

The Bank further contends that the Act is uniquely federal in nature and that this "peculiar statutory nexus" mandates exclusive federal court jurisdiction. The distinguishing factor of the RFPA, according to the Bank's argument, is that the sovereign is connected to every violation of the Act. We find no such peculiarity, however, such that there would be any incompatibility between federal interests and concurrent state court jurisdiction under the ***Gulf Offshore*** test. Causes of action such as this, which adjudicate claims based on substantive federal law, may be adjudicated in state courts, notwithstanding federal law preemption of state law. ***Dowd Box Co. v. Courtney***, 368 U.S. 502, 507-8 (1962)(holding that the conferral of federal jurisdiction for causes of action arising under section 301(a) of the Labor Management Relations Act of 1947 does not divest state courts of jurisdiction).

As noted above, no agency of the United States is a party to this action. The Walkers' claim has been brought only against the Bank pursuant to section 3417 of the RFPA, which provides for civil penalties for violations of the Act. Section 3417 provides:

> (a) Liability of agencies of departments of United States or financial institutions. Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this title is liable to the customer to whom such records relate in an amount equal to the sum of - -

(1) $100 without regard to the volume of records involved;

(2) any actual damages sustained by the customer as a result of the disclosure;

(3) such punitive damages as the court may allow, where the violation is found to have been willful or intentional; and

(4) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

. . . .

(d) Exclusive judicial remedies and sanctions. The remedies and sanctions described in this title shall be the only authorized judicial remedies and sanctions for violations of this title.

12 U.S.C.S. § 3417 (2002).

Violations of the RFPA are not offenses against the United States and do not result in criminal penalties. There is nothing in the text of the RFPA which would indicate any danger to the interests of the United States which may result from state court jurisdiction over causes of actions brought against a bank of that state pursuant to the Act. State courts are presumed competent to adjudicate such federal acts, and we find no clear or disabling incompatibility between state court jurisdiction and federal interests in this case.

The presumption of concurrent state court jurisdiction is not merely "an evidentiary starting point in determining Congress' intent." *Holmes Financial*, 33 F.3d at 565 n.4. Concurrent jurisdiction exists unless affirmatively and expressly revoked. *Id.* We find nothing in the RFPA that warrants aberration from the "consistent history of hospitable acceptance of concurrent jurisdiction." *Dowd Box*, 368 U.S. at 508. We accordingly hold that state courts have concurrent jurisdiction to adjudicate causes of action brought against financial institutions by customers for alleged violations of the Right to Financial Privacy Act.

### *Application of the Tennessee Financial Records Privacy Act to Subpoenas for Bank Records Issued by Federal Agencies*

Tenn. Code Ann. § 45-10-101 *et seq*., the Financial Records Privacy Act, governs the disclosure of financial records in Tennessee. The bank submits that federal agencies are not "persons" as defined by the Act, and that the Act therefore is not applicable in this case. In the alternative, it argues that even if the definition of "person" for purposes of the Act did include a federal agency, the State has no jurisdiction over a federal subpoena. The Bank submits that the State therefore cannot "permit" disclosure pursuant to a State act. As we understand it, the Bank's contention is that the field is preempted by the federal Act, and that the Tennessee Act would have no application to any disclosure made pursuant to a federal subpoena, regardless of whether that subpoena was valid.

We first turn to the provisions of the Tennessee statute. When interpreting a statute, this Court's primary objective is to effectuate the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). Insofar as possible, the intent of the legislature should be determined by the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning. *Id.* It is axiomatic that the first step in interpreting a statute is to look to the express provisions of the statute itself. Section 103 (10) of the Tennessee Act provides:

> **Permissible acts. --** The following acts are expressly permitted by, but are not otherwise subject to, the provisions of this chapter:
>
> . . . .
>
> (10) the furnishing of information or records to any federal officer or agency as long as furnishing such information is not prohibited by the federal Right to Financial Privacy Act of 1978.

Tenn. Code Ann. 45-10-103(10)(Supp. 2001).

Since it is undisputed that disclosure of the records of corporate customers to federal agencies is not prohibited by the federal Act, disclosure of the corporation's records to a federal agency is not controlled by the Tennessee statute. Likewise, the disclosure of an individual customer's records to a federal agency is not controlled by the Tennessee Act as long as such disclosure is not prohibited by the federal Act. We read this provision as properly recognizing that disclosure pursuant to a valid federal subpoena is governed by the federal Act, and expressly is "not otherwise subject to" the Tennessee Act.

We next turn to whether a customer may bring a cause of action pursuant to the Tennessee Act when disclosure to a federal agency is in fact prohibited by the RFPA. To the extent that the Tennessee Act conflicts with federal law, it would be preempted under the Supremacy Clause of the United States Constitution, art. 6, clause 2. *See In re Grand Jury Subpoena*, 688 F.Supp. 319 (W.D. Tenn. 1988) (holding that to the extent that the Tennessee Act conflicts with the bank's obligations to comply with the command of a federal grand jury, it is invalid under the Supremacy Clause); *Securities and Exch. Comm'n v. First Tennessee Bank N.A.,* 445 F.Supp. 1341 (W.D. Tenn 1978). Where there is no conflict between the federal Act and the Tennessee Act a cause of action could be adjudicated under the Tennessee statute.

As the Bank submits, however, the question arises as to whether the Tennessee statute encompasses disclosure made to federal agencies. The Tennessee Act provides:

> **Requisites for disclosure - - Effect of disclosure. - -** (a) Except as provided in § 45-10-103, a financial institution may not disclose to any *person*, except to the customer or the customer's agent, any financial records relating to the customer unless . . . .

Tenn. Code Ann. § 45-10-104(a)(2000)(emphasis added).  For purposes of this Act, "person" is defined as:

> Any individual, partnership, corporation, association, trust or any other legal entity organized under the law of this state, including any department or agency of this state, any county or municipal corporation located in this state, and any court of this state or of the United States.

Tenn. Code Ann. § 45-10-102(7)(2000).[9]  Thus a federal agency is not a person to whom disclosure is controlled by the Tennessee Act.  The Walkers contend that, notwithstanding the definitional restrictions, the fact that disclosure to a federal agency pursuant to a valid subpoena is expressly a permissible act under Tenn. Code Ann. § 45-10-103(8) requires a holding that compliance with a subpoena which is invalid on its face is accordingly a violation of the Tennessee Act.  While we recognize the logic of the Walkers' argument, we note that the legislature clearly considered instances of disclosure pursuant to a federal agency subpoena.  It expressly provided for such disclosure in section 103(8) of the Tennessee Act.  The legislature expressly did not, however, include federal agencies in section 102(7), which controls to whom the Act is applicable.  We may not extend the Act's application beyond that intended by the legislature.  We accordingly hold that the Walkers' do not have a cause of action under the Tennessee Financial Records Privacy Act against the Bank for disclosure of records pursuant to a subpoena issued by a federal agency, even assuming, arguendo, the subpoena was invalid as the Walkers allege.  The Walkers' cause of action is controlled by the provisions of the federal Right to Financial Privacy Act.

### *Conclusion*

In light of the foregoing, we hold that state courts retain concurrent jurisdiction to adjudicate causes of action against defendant financial institutions brought pursuant to the federal Right to Financial Privacy Act of 1978, 12 U.S.C.S. § 3401 *et seq*.  Federal court jurisdiction is exclusive to 12 U.S.C.S. § 3410 motions to quash federal subpoenas.  We further hold that in Tennessee, the disclosure of financial records to federal agencies is controlled by the federal RFPA.  The Tennessee Financial Records Privacy Act, Tenn. Code Ann. § 45-10-101 *et seq*., does not govern disclosures made to federal agencies, which are not "persons" to whom disclosure is controlled by the State statute.

We affirm the order of the trial court denying Bank's motion for summary judgment.  This case is remanded for further proceedings consistent with this opinion.  Costs of this appeal are taxed one-half each to the Appellees, Jerry Walker and wife, Opal Walker, and Walker & Assoc. Realty,

---

[9]As noted, disclosure pursuant to a federal grand jury subpoena has been held to be preempted by the RFPA. *In re Grand Jury Subpoena*, 688 F. Supp. 319 (W.D. Tenn. 1988).

Inc., f/k/a Century 21 Walker & Assoc., Inc., and the Appellant, Citizens Bank of Lafayette, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE