RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0131p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JODI C. HOHMAN; JHOHMAN, LLC; YOU GOT BUSTED
BY ME, LLC; TERRY MILLER,

*Plaintiffs-Appellants*,

*v.*

No. 17-1869

MAURICE EADIE, et al.,

*Defendants*,

UNITED STATES OF AMERICA; DEPARTMENT OF
TREASURY; INTERNAL REVENUE SERVICE,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-11429—Matthew F. Leitman, District Judge.

Argued:  April 26, 2018

Decided and Filed:  July 5, 2018

Before:  MERRITT, WHITE, and DONALD, Circuit Judges

———————————

## COUNSEL

**ARGUED:**  Stuart M. Schwartz, CLARK HILL PLC, Detroit, Michigan, for Appellants.  Paul A. Allulis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:**  Stuart M. Schwartz, CLARK HILL PLC, Detroit, Michigan, for Appellants.  Paul A. Allulis, Michael J. Haungs, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

**OPINION**

---

MERRITT, Circuit Judge.   This appeal raises a highly technical issue arising from a potential conflict between the Internal Revenue Code and the Federal Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–3422.[1]   The IRS issued two "John Doe" summonses without first obtaining approval in a federal district court as required by the Internal Revenue Code ("Code"), *see* I.R.C. § 7609(f).   The IRS served the summonses on Chase Bank to obtain financial records relating to two limited liability companies ("LLCs").   Plaintiffs, the LLCs and subjects of the John Doe summonses, alleged that the IRS's use of the John Doe summonses to obtain their financial records violated the Right to Financial Privacy Act ("Act").   The district court granted the government's motion to dismiss for lack of subject matter jurisdiction after determining that sovereign immunity barred Plaintiffs' claims under the Act.   The issues on appeal are (1) whether the IRS is subject to the Act when it fails to follow its own procedures under the Code, and (2) whether LLCs fall within the Act's waiver of sovereign immunity.   We **AFFIRM** the district court on sovereign immunity grounds.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Internal Revenue Code permits the IRS to serve administrative summonses on third parties to produce records related to taxpayers whom the IRS is investigating.   *See* I.R.C. § 7603. Generally, these summonses must identify the person whose records are sought.   *See* I.R.C § 7609.   However, the IRS may also serve a John Doe summons, which does not identify the person whose records are sought.   I.R.C. § 7609(f).   This type of summons may be served only after a federal district court proceeding in which the IRS establishes that:

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

---

[1]Section 3423 was effective on May 24, 2018, after the initiation of this lawsuit.

(3) the information sought to be obtained. . . is not readily available from other sources.

*Id.*

On September 25, 2015, the IRS served a John Doe summons on Chase Bank that sought financial records for two separate accounts (the "First John Doe Summons"). Five days later, on September 30, the IRS served a second John Doe summons that sought financial records for a single account (the "Second John Doe Summons"). The three accounts involved were identified only by account numbers. The IRS failed to seek approval from a federal district court prior to issuing either of the John Doe summonses.

In October 2015, Chase Bank notified Jodi C. Hohman ("Hohman") and her company JHohman, LLC that it had received the First John Doe Summons from the IRS and that the summons sought records for accounts relating to them. On November 25, 2015, Hohman and JHohman, LLC filed a petition in federal district court to quash the summons. In the petition to quash, Hohman and JHohman, LLC argued that the First John Doe Summons did not meet the requirements listed in I.R.C. § 7609(f), which requires the IRS to obtain approval from a federal court before serving a John Doe summons.

In response to the petition to quash, the IRS produced sworn declarations from the IRS agents who had issued the First John Doe Summons. It attached a partially-redacted copy of the First John Doe Summons to the declarations. The document revealed the first account number listed on the summons, but the second account number was redacted. Hohman and JHohman, LLC reviewed the document and determined that the first account number on that summons belonged to JHohman, LLC. Because the second account number remained masked, they were unable to determine who owned that account. Their subsequent investigation led them to believe that the second account either belonged to Terry Miller ("Miller"), individually, or his company, You Got Busted By Me, LLC ("Busted, LLC"). Miller is the sole member and owner of Busted, LLC.

The proceeding also revealed that the IRS had served the Second John Doe Summons on Chase Bank. The IRS attached an unredacted copy of the Second John Doe Summons to the

declarations.  Hohman and JHohman, LLC determined that the summons sought records relating to an account belonging to Hohman, individually.  They later withdrew their petition to quash.

Plaintiffs Hohman, JHohman, LLC, Miller, and Busted, LLC (collectively, "Plaintiffs") filed suit against the United States, two IRS employees, and unnamed Jane and John Does, on April 20, 2016, alleging that the IRS violated the Right to Financial Privacy Act, the Privacy Act of 5 U.S.C. § 552a, the Fourth and Fifth Amendments of the Constitution, and the Internal Revenue Code's prohibition of the unauthorized disclosure of tax return information.

On June 24, 2016, the government moved to dismiss the complaint.  After a hearing, the district court granted this motion in regards to the claims under the Privacy Act, the Fourth and Fifth Amendments, and the Code's prohibition of the unauthorized disclosure of return information.  *Hohman v. Eadie*, No. 16-cv-11429, 2016 WL 10906875, at *1 (E.D. Mich. Nov. 7, 2016).  However, the district court denied the motion to dismiss as to the Right to Financial Privacy Act claim, which is the sole claim at issue on appeal.  The court dismissed the IRS employees from the suit and held that the sole remaining defendant was the United States.

In its motion to dismiss, the government argued that the Right to Financial Privacy Act was inapplicable to claims arising out of the issuance of IRS summonses.  Specifically, the United States's argument rests upon the following language from the Act:  "Nothing in this chapter prohibits the disclosure of financial records in accordance with procedures authorized by Title 26 [the Internal Revenue Code]."  12 U.S.C. § 3413(c).  According to the government, because the Internal Revenue Code authorizes the service of John Doe summonses, *see* I.R.C. § 7609(f), its service of such summonses in this case was "in accordance with procedures authorized by [the Code]," and, thus, exempt from the Act.  The district court disagreed. *Hohman*, 2016 WL 10906875, at *2–3.  It determined that the IRS's service of the John Doe summonses without prior judicial approval was not "in accordance with" the Code because it was fundamentally inconsistent with the procedures authorized by the Code.  *Id.*  Therefore, the court held that the service was not exempt from the Act and denied the motion as to the claim under the Act.  *Id.* at *3.

On January 17, 2017, the United States filed a second motion to dismiss for lack of subject matter jurisdiction. The resolution of this motion is the only issue on appeal. The government contended that sovereign immunity divested the court of subject matter jurisdiction over Plaintiffs' claim against the United States. Plaintiffs responded to the government's motion by arguing that the waiver of sovereign immunity applied and requested that the district court grant them jurisdictional discovery before ruling on the motion. Specifically, Plaintiffs asked to conduct discovery to determine whether Miller, individually, or Busted, LLC, owned the account whose account number was redacted in the First John Doe Summons. Plaintiffs also requested discovery to determine whether the IRS actually obtained any documents in response to the Second John Doe Summons, which sought documents related to an account owned by Hohman, individually. The district court authorized both discovery requests. *Hohman v. United States*, No. 16-cv-11429, 2017 WL 2954713, at *4–5 (E.D. Mich. July 11, 2017).

Additionally, Plaintiffs asked that the district court allow them to subpoena other banks where Hohman and Miller maintained accounts to determine whether the IRS had improperly subpoenaed these banks as well. Further, Plaintiffs requested to conduct discovery with respect to four other individuals whom, based on Plaintiffs' investigation, likely had John Doe summonses issued for their accounts, but were not parties to the lawsuit. The district court denied these discovery requests and instead chose to confine the discovery to Plaintiffs' accounts at Chase Bank because those accounts were the subject of the lawsuit and because the court wanted to limit discovery to allow it to answer the jurisdictional question.

After reviewing the documents produced by discovery, the district court determined that Busted, LLC—not Miller, individually—owned the second account listed on the First John Doe Summons. Thus, the three accounts relating to the two summonses belonged to JHohman, LLC, Busted, LLC, and Hohman. The court also concluded that Chase Bank did not actually send the IRS any financial records or information relating to Hohman's individual account in response to the Second John Doe Summons. Because Hohman did not allege that the IRS actually obtained any financial records relating to an account owned by Hohman as required by section 3417 of the

Act, the court determined that Hohman, individually, had failed to state a claim.**2**  The district court also found that the United States was immune from the claims by JHohman, LLC and Busted, LLC because section 3417's waiver of sovereign immunity only covered claims by a "customer" as defined under the Act, and LLCs did not qualify as "customers."  *Hohman*, 2017 WL 2954713, at \*5–7.  It subsequently granted the government's motion to dismiss.  *Id.* at \*7.  Plaintiffs appeal.

## II.  ANALYSIS

Plaintiffs allege that the IRS's attempts to obtain their financial records through the use of John Doe summonses violated the Federal Right to Financial Privacy Act.  They argue that contrary to the district court's holding, LLCs fall within the Act's waiver of sovereign immunity.  Plaintiffs also claim that the district court abused its discretion in only granting them limited jurisdictional discovery.  In response, the United States contends that IRS summonses are not subject to the Act, but even if this court disagrees, sovereign immunity still bars Plaintiffs' claims.  The government also asserts that the district court properly denied the additional discovery requests given the broad nature of the inquiry and the lack of factual allegations regarding any summonses other than the two summonses at issue.

We review de novo the dismissal of a complaint for lack of subject matter jurisdiction.  *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 619 (6th Cir. 2010).  We accept any factual findings the district court made unless the findings are clearly erroneous.  *Davis v. United States*, 499 F.3d 590, 593–94 (6th Cir. 2007).  Further, this court reviews a district court's decisions regarding discovery matters for abuse of discretion.  *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009).  We "reverse only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error."  *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004) (internal quotation and citation omitted).

---

**2**The district court's determination that Hohman had failed to state a claim against the IRS is not at issue on appeal.

**A. Possible Remedies under the Internal Revenue Code**

Section 7609 of the Internal Revenue Code establishes a system of notice and intervention rights for taxpayers whose information is within records subject to a third-party summons. However, when the IRS does not know the identity of a taxpayer and seeks to serve a John Doe summons, the IRS must first establish in a proceeding in federal district court that (1) the summons relates to the investigation of a particular person or ascertainable group; (2) there is a reasonable basis for believing that this person or group may have failed to comply with the Code; and (3) the information sought to be obtained is not readily available from other sources. I.R.C. § 7609(f). In the case at hand, the IRS did not follow the proper procedure when it failed to obtain court approval before issuing two John Doe summonses to Chase Bank.

The government contends in its brief that imposition of damages under the Act for violations of the Code would conflict with the Code's comprehensive damages scheme. Turning to relevant provisions of the Code, it appears that no monetary remedy is available under these circumstances, and the parties conceded this at oral argument. *See* I.R.C. §§ 7431–7435. The Code provision that comes the closest to providing a remedy for Plaintiffs in this case is I.R.C. § 7433. Section 7433 authorizes taxpayers to sue the government for damages sustained as a result of reckless, intentional, or negligent violations of the Code by IRS employees in connection with any collection of federal tax. This provision is the "exclusive remedy for recovering damages resulting from such actions." I.R.C. § 7433(a). However, section 7433 only authorizes damages for claims in connection with any *collection* of federal tax, and does not allow for damages for violations made during "the assessment or tax determination part of the process." *Miller v. United States*, 66 F.3d 220, 222 (9th Cir. 1995). The assessment involves the decision to impose tax liability while the collection deals with the IRS attempting to collect the taxes owed.

In *Shaw v. United States*, the Fifth Circuit stated that "based upon the plain language of the statute, which is clearly supported by the statute's legislative history, a taxpayer cannot seek damages under § 7433 for improper assessment of taxes." 20 F.3d 182, 184 (5th Cir. 1994). It recognized that "[a]lthough in its early form the statute granted taxpayers the right to sue 'for damages in connection with the *determination* or *collection* of any Federal tax,' H.R. CONF.

REP. NO. 100–1104, 100th Cong., 2d Sess. 228 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4515, 5288 (emphasis added), Congress later deleted that portion of the statute that referred to determination of taxes." *Id.* Thus, it appears that Congress intended to provide a remedy for violations in the collection of tax, but not in the assessment and determination of tax. Plaintiffs do not have a monetary remedy under the Code.[3]

## B. Background of the Right to Financial Privacy Act

The Right to Financial Privacy Act, 12 U.S.C. § 3401, was enacted as a response to *United States v. Miller*, 425 U.S. 435, 442 (1976), where the Supreme Court held that a customer of a financial institution had "no legitimate 'expectation of privacy'" and could not contest government access to financial records under the Fourth Amendment. "Congress intended the [Act] 'to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity' by requiring federal agencies" to follow specified procedures when attempting to obtain a customer's financial records. *Neece v. IRS*, 922 F.2d 573, 575 (10th Cir. 1990) (quoting H.R. Rep. No. 95-1383, at 6 (1978), *reprinted in* 1978 U.S. Code. Cong. & Admin. News 9273, 9305, 9278).

The Act "outlines numerous restrictions on the disclosure of financial records held by bank employees and federal regulatory authorities." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983). However, the Act is narrow and limits the types of customers to whom it applies and the kinds of records it protects. *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984). In all, the Act seeks to balance the customers' right of privacy with law enforcement's need to obtain financial records based on legitimate investigations. *See Anderson v. La Junta State Bank*, 115 F.3d 756, 758 (10th Cir. 1997).

Plaintiffs bring their claims under section 3417 of the Act. That section creates a private cause of action for violations of the Act and waives the United States' sovereign immunity for certain claims by a "customer." It reads:

---

[3]We note that while the Code does not appear to allow monetary remedies in this instance, IRS employees are subject to dismissal for violations of the Code for purposes of retaliating against, or harassing, a taxpayer. *See* I.R.C. § 7605(b). IRS employees are also subject to discharge and criminal prosecution for committing unlawful acts. I.R.C. § 7214(a).

**(a) Liability of Agencies or Departments of United States or Financial Institutions** Any agency or department of the United States . . . obtaining or disclosing financial records or information contained therein in violation of [the Act] is liable *to the customer* to whom such records relate in an amount equal to the sum of—

(1) $100 without regard to the volume of records involved;

(2) any actual damages sustained by the customer as a result of the disclosure;

(3) such punitive damages as the court may allow, where the violation is found to have been willful or intentional; and

(4) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

12 U.S.C. § 3417 (emphasis added).

## C. Whether the IRS is Subject to the Right to Financial Privacy Act

The Right to Financial Privacy Act prohibits government access to the financial records of a customer unless pursuant "to an administrative subpoena or summons which meets the requirements of section 3405" of the Act. 12 U.S.C. § 3402. In Plaintiffs' claims under section 3417, they allege that the IRS violated section 3405 when it served the John Doe Summonses without first satisfying certain conditions as required by that section. Section 3405 states that an agency may obtain financial records pursuant to an administrative summons only if—(1) there is reason to believe the records sought are connected to a legitimate law enforcement inquiry; (2) a copy of the summons is served on the customer prior to service on the financial institution along with a notice stating the nature of the inquiry and advising the customer of his or her right to contest the summons in federal court; and (3) ten days have passed since service and the customer has not initiated a challenge in court. 12 U.S.C. § 3405. However, the Act provides an exception, which states: "Nothing in this chapter prohibits the disclosure of financial records *in accordance with* procedures authorized by [the Internal Revenue Code]." 12 U.S.C. § 3413(c) (emphasis added).

The parties dispute the meaning of the "in accordance with" language. When confronted with this question, the district court stated that from a plain reading, the exception only applies to IRS summonses issued "in accordance with" procedures under the Code. The court reasoned

that because the IRS failed to follow the requisite Code procedures by issuing summonses without first obtaining approval in federal district court, it was subject to the provisions of the Act, including damages claims.

On appeal, Plaintiffs contend that the district court correctly determined that the plain meaning of this language is that the IRS has to act "in accordance with" the Code, or it is subject to the Act. In support, Plaintiffs cite *Neece v. IRS*, 922 F.2d 573, 577 (10th Cir. 1990). In *Neece*, the IRS made a similar argument when it asserted that it was allowed to informally review bank records under I.R.C. § 7602. The IRS referenced the same provision of the Act authorizing "disclosure of financial records in accordance with procedures authorized by [the Internal Revenue Code]." 12 U.S.C. § 3413(c). The Tenth Circuit disagreed and determined that while I.R.C. § 7602 permitted the IRS to issue a third-party summons, I.R.C. § 7609 set forth the procedure the IRS was required to follow. *Neece*, 922 F.2d at 577–78. The IRS had not followed the proper procedure under its own Code, and so the IRS was bound by the Act. *Id.* at 577.

In response, the government argues that the Act has no application to any activities carried out under the Code, including the issuance and enforcement of IRS summonses. In support, it cites the legislative history to argue that Congress indicated that this exception was intended to exempt IRS summonses generally because they are governed by their own privacy regime. It also contends that *Neece* is distinguishable because it involved an instance where the IRS obtained records informally, instead of through the issuance of a summons.

There are two possible ways to read the phrase "in accordance with." Congress either intended for this language to mean: (1) that the Code and not the Act governs the IRS, or (2) that the IRS must follow the procedures under the Code, or it is subject to the Act. A review of the relevant provision and legislative history indicates that Congress did not give any thought to or explain what it intended to have happen in a case like this. The House Committee Report states that under the exception, because IRS administrative summonses are already subject to the privacy safeguards of I.R.C. § 7609, they are exempted from the procedures of the Act. H.R. Rep. 95–1383, at 226 (1978).

Because we uphold the district court's ruling on sovereign immunity grounds, however, there is no need for us to resolve this issue.

**D. Whether Limited Liability Companies Have Standing under the Act**

The issue is whether the United States has waived its sovereign immunity to allow limited liability companies to sue under the Right to Financial Privacy Act. "The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Further, courts must construe this waiver narrowly and resolve any ambiguities in favor of immunity. *United States v. Williams*, 514 U.S. 527, 531 (1995).

The relevant provision in 12 U.S.C. § 3417 states: "Any agency or department of the United States . . . obtaining or disclosing financial records or information contained therein in violation of [the Act] is liable *to the customer* to whom such records relate." A "customer" is defined under the Act as "any *person* or authorized representative of that person who utilized or is utilizing any service of a financial institution." 12 U.S.C. § 3401(5) (emphasis added). A "person" is defined as "an *individual* or a *partnership* of five or fewer individuals." 12 U.S.C. § 3401(4) (emphasis added). Thus, the question at hand is whether Plaintiffs, two LLCs, qualify as a "person," and therefore a "customer" with standing under the Act.

The district court reasoned that an LLC is not "an individual or a partnership of five or fewer individuals" and therefore not a "person." *Hohman*, 2017 WL 2954713, at *6. Thus, by strictly interpreting the statute, it found that an LLC could not be a "customer" under the Act with standing to sue. *Id.* Other courts have confronted this question when different types of business entities have attempted to bring suit under the Act. We analyze these holdings below.

*1. Sole Proprietorship*

Courts have concluded that a sole proprietorship has standing under the Act. "It would strain the imagination to conclude that Congress intended to afford partnerships of five

individuals the protections of the Act, but not sole proprietorships. A sole proprietorship is nothing more than a partnership of one." *Hunt v. U.S. SEC*, 520 F. Supp. 580, 604 (N.D. Tex. 1981); *see also United States v. Whitty*, 688 F. Supp. 48, 58 n.9 (D. Me. 1988) ("Unlike corporations, sole proprietorships are covered by the [Act].").

### 2. *Limited Partnership*

A limited partnership has also been held to be a "person" under the Act. *See Inspector Gen. of U.S. Dep't. of Agric. v. Great Lakes Bancorp*, 825 F. Supp. 790, 793 (E.D. Mich. 1993) ("Great Lakes"). In *Great Lakes*, the district court reasoned that "the plain language of the statute evinces an intent to include (rather than exclude) all types of partnerships." *Id.* Further, it thought that "[t]he fact that Congress recognizes the distinction between limited partnerships and general partnerships, and yet did not exclude the former from those who are included as 'persons' within the Act, signifies an intent to protect *all* 'partnerships (whether they are general partnerships, co-partnerships, or limited partnerships) of five or fewer individuals.'" The court determined that the focus remains on the size of the partnership, not the type.[4]

### 3. *Corporation*

The courts that have confronted the question unanimously agree that corporations do not qualify as a "customer" within the meaning of the Act. *See Pittsburgh Nat. Bank v. United States*, 771 F.2d 73, 75–76 (3d Cir. 1985) (finding that by its terms, the Act only applies to the financial records of individuals and small partnerships, not corporations); *Spa Flying Service, Inc. v. United States*, 724 F.2d 95, 96 (8th Cir. 1984) ("[T]he Act unambiguously limits its protection to customers and small partnerships."); *Collins v. Commodity Future Trading Comm'n*, 737 F. Supp. 1467, 1477 (N.D. Ill. 1990) (same). Additionally, because a corporation has been held to not be a "customer" and therefore not an "individual" under the Act, *Great*

---

[4]The government filed an additional citation after oral argument in regards to *Great Lakes*. It clarified that the case concerned only limited partnerships after this court asked whether the case applied to limited *liability* partnerships at oral argument. The government's position is that only general partnerships are included within the definition of the term "partnership" as used in the Act's definition of the term "person." It asserts that even if this court adopts the reasoning of *Great Lakes*, that reasoning would reach neither limited liability partnerships nor LLCs.

*Lakes* also held "that a partnership comprised of one or more corporate partners is not a 'partnership of five of fewer *individuals*.'" *Great Lakes*, 825 F. Supp. at 794.

### 4. Limited Liability Company

Whether an LLC has standing under the Act is an issue of first impression in the circuit courts, and has only been addressed by two federal district courts. *See Flatt v. U.S. SEC*, 2010 WL 1524328, at *3 (S.D. Fla. Apr. 14, 2010); *Exchange Point LLC v. U.S. SEC*, 100 F. Supp. 2d 172, 176 (S.D.N.Y. 1999). The court in *Exchange Point*, which *Flatt* relied on, stated:

> Federal courts have recognized that a major difference in practice between a limited partnership and an LLC is the more extensive limitations in liability accorded to members of the latter. The LLC "need have no equivalent to a general partner, that is, an owner who has unlimited personal liability for the debts of the firm." *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998) (applying Wisconsin LLC law). Additionally, a member of an LLC is not subject to the same risks that he or she may become liable for the company's debts[.]

*Exchange Point LLC*, 100 F. Supp. 2d at 174. The court continued its discussion:

> In addition to the omission of any term that could encompass an LLC in the statutory definition of person in the [Act], the Court notes a key difference between an LLC and all of the entities that have been held to be persons under the [Act]: an LLC need not have any member or manager that is liable for the debts of the company, even in the case of a wholly owned LLC with only one member-manager.

*Id.* at 175. The *Exchange Point* court found "some substance in the argument that a single member LLC has many of the same attributes and privacy interests as a small partnership or sole proprietorship," but determined that the plain meaning of the statute "simply cannot countenance the inclusion of a limited liability company in the term 'individual or partnership of five or fewer individuals.'" *Id.* at 176.

Plaintiffs argue that the district court erred in failing to consider the congressional purpose behind the Act when determining the scope of Congress's waiver of sovereign immunity. They assert that the district court failed to consider the realities of LLCs, specifically single-member LLCs. Plaintiffs contend that *Exchange Point's* plain-meaning reasoning fails because single-member LLCs, are "disregarded" by the government for federal income tax

purposes. If a single-member LLC does not elect to be treated as a corporation for taxation purposes, then the single member will be liable individually for the company's taxes. Plaintiffs contend that this leaves the single member as well as the LLC in need of protection under the Act.

Plaintiffs make substantive arguments that LLCs should be included within the definition of "customer" under the Act. Admittedly, a single-member LLC resembles individuals or partnerships covered under the Act. However, the district court properly recognized that "it is never [the Court's] job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that . . . it never faced." *Hohman*, 2017 WL 2954713, at *6 (quoting *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017)). Here, an LLC is plainly not within the plain meaning of the words "individual or a partnership of less than five individuals." Neither Plaintiffs nor this court may supplement the unambiguous statutory language. *Cf. Brackfield & Assocs. P'ship v. Branch Banking & Tr. Co.*, 645 F. App'x 428, 431 (6th Cir. 2016) (declining to adopt plaintiff's proposed approach to statutory construction because doing so would greatly broaden the interpretation of the Right to Financial Privacy Act).

Additionally, *Exchange Point* was correct in noting that an LLC, unlike other entities that have been held to be persons under the Act, need not have any member that remains liable for the company's debts, even in the case of a single-member LLC. While it is true that single-member LLCs, are "disregarded" by the government for federal income tax purposes, that fact does not overcome the limited liability aspect and strict textual approach that this court must apply when interpreting waivers of sovereign immunity. *See FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("[A] waiver of sovereign immunity must be 'unequivocally expressed' in the statutory text."). In sum, we hold that an LLC does not fall under the Act's waiver of sovereign immunity and the district court correctly held that it lacked sovereign immunity over Plaintiffs' claims.

**E. Whether the District Court Properly Granted Limited Jurisdictional Discovery**

Plaintiffs argue that the district court abused its discretion by unduly limiting the scope of discovery to Hohman and Miller individually and their respective individual accounts held at

Chase Bank.  As mentioned previously, Plaintiffs requested to issue subpoenas to the other banks where Hohman and Miller maintain accounts to find out if the government improperly issued subpoenas to those banks as well.  Plaintiffs also asked for discovery with respect to four other individuals who based on Plaintiffs' investigation, likely had "secret" John Doe summonses issued for their accounts.  The district court chose to confine the discovery to the Plaintiffs' accounts at Chase Bank, the accounts that were the subject of the lawsuit, before ruling on the motion to dismiss.

Here, the district court specifically limited discovery to address the jurisdictional issues involved.  That was within its discretion.  The court allowed Plaintiffs access to the information necessary to establish their claims before ruling on the motion to dismiss.  *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) ("We have noted that a plaintiff should have access to information necessary to establish her claim, but that a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion.").  Further, the four other individuals who Plaintiffs believed likely had "secret" John Doe summonses issued for their accounts were not parties to the lawsuit and Plaintiffs make no argument that any information from them would relate to the narrow jurisdictional questions for which discovery was permitted.  District courts maintain discretion to limit the scope of discovery, and the court did not make a mistake that affected Plaintiffs' substantial rights here.

## III.  CONCLUSION

For the reasons explained above, we affirm.